IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs February 6, 2001

## STATE OF TENNESSEE v. SHERMAN SHAW

**Direct Appeal from the Criminal Court for Shelby County**
**No. 99-00712    Carolyn Wade Blackett, Judge**

---

**No. W2000-00384-CCA-R3-CD - Filed March 14, 2001**

---

A Shelby County jury convicted the defendant of aggravated robbery. The trial court sentenced him to 15 years as a Range II multiple offender. In this appeal, the defendant alleges (1) the trial court erroneously admitted the defendant's custodial statement; (2) the evidence was insufficient to sustain the defendant's conviction; (3) the cumulative effect of the trial court's errors requires a new trial; and (4) the defendant's sentence is excessive. After a thorough review of the record, we affirm the judgment and sentence imposed by the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JERRY SMITH, JJ., joined.

Michael E. Scholl, Memphis, Tennessee, for the appellant, Sherman Shaw.

Paul G. Summers, Attorney General and Reporter; Laura E. McMullen, Assistant Attorney General; William L. Gibbons, District Attorney General; and Glen C. Baity, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant was convicted of aggravated robbery and received a 15-year sentence. In this appeal, the defendant alleges (1) the trial court erroneously admitted the defendant's custodial statement; (2) the evidence was insufficient to sustain the defendant's conviction; (3) the cumulative effect of the trial court's errors requires a new trial; and (4) the defendant's sentence is excessive. Upon our review of the record, we affirm the judgment and sentence imposed by the trial court.

# I. FACTS

On September 10, 1998, shortly after 10:00 p.m., the defendant and his accomplice, Corey Dean, entered a convenience store. The defendant and Dean approached the clerk, Mohammad Alia, who knew both the defendant and Dean as they had been in the store on prior occasions. Neither the defendant nor Dean was wearing a mask. The defendant asked if Alia had seen any police in the neighborhood. When Alia replied "no," Dean pointed a weapon at him, and the defendant ordered Alia to open the register. The defendant then removed money from the register and took a pistol which was hidden near the money. After retrieving the money and weapon, the defendant instructed Dean to "shoot the mother f---er." A customer entered the store, and the two men fled the scene. Alia phoned the police and provided a description of the assailants, and the police were on the scene within minutes.

The police located the defendant within one block of the scene, and although the defendant initially fled, he was apprehended. The defendant stated that he ran from the officers because he possessed a small bag of marijuana which he threw down during the officer's pursuit; however, no marijuana was found in the area. Alia identified the defendant near the location of his apprehension. Dean was not located until several days later.

Investigator Michael Clark testified that he and Sergeant Stan Bowles interviewed the defendant on September 11th at approximately 1:30 p.m. Clark further testified that the defendant himself read his Miranda rights aloud and signed a waiver, and Clark informed the defendant of the factual basis of his investigation. The defendant denied ever being inside the convenience store and stated he ran because he possessed a small bag of marijuana.

Cory Dean was arrested on September 13th and inculpated the defendant in his statement to police. Dean also took the authorities back to the area of the defendant's arrest and led them to the weapon used in the robbery. Clark re-interviewed the defendant on September 14th. Clark informed the defendant of Dean's arrest, and that Dean inculpated him. Thereafter, the defendant signed a typed confession admitting to his participation in the robbery.

Corey Dean testified that it was the defendant's idea to rob the store. He stated that after they entered the store, the defendant handed him a pistol; the defendant took the money and a pistol from behind the counter; and after they fled, they split the money.

The defendant testified that on September 10th, he was visiting his girlfriend's apartment and he decided to purchase some drinks. He left the apartment and while walking to the store, he met Corey Dean who accompanied him to the store. The defendant further testified that after they entered the store, Dean pointed a weapon at him and Alia and ordered the defendant to take the money from the register. The defendant explained that he left the store with Dean because he was fearful that if he failed to leave with Dean, then he and Alia would be killed.

The defendant further testified that on September 11th when he was questioned, he refused to provide Dean's name because he feared Dean's gang's retaliation. The defendant testified that on September 14th, when he was again interviewed, an unknown man entered the room and threatened him with a club. He said he signed a fabricated statement due to the threats.

The state rebutted the defendant's testimony with the testimony of Dean and Investigator Clark. Dean stated that he was not a gang member and never pointed a weapon at the defendant. Investigator Clark stated that during the defendant's second interview, he and Officer Stan Bowles were the only persons in the room; nobody else entered the room; and no night sticks or batons were ever inside the room.

## II. SUPPRESSION MOTION

The defendant contends his confession should have been suppressed. Specifically, the defendant contends (1) there was unnecessary delay in taking him before a magistrate; (2) his confession was involuntary; and (3) he was denied his right to counsel.

### A. Suppression Hearing

At the suppression hearing, Investigator Clark testified that the defendant was arrested on Thursday, September 10, 1998, at 10:18 p.m., and he first interviewed the defendant on Friday, September 11th, at approximately 1:30 p.m. Before the interview, Clark gave the defendant a Miranda rights form, and the defendant read it aloud and stated that he understood his rights. The defendant then signed the Miranda waiver and indicated he wished to talk with Clark. During the interrogation, the defendant denied any involvement in the robbery, denied ever being inside the store, stated he ran from the officers because he possessed a small amount of marijuana, and instructed Clark to re-interview him if "anything changed" in the case.

On September 13th, Corey Dean was arrested and inculpated the defendant. Due to the defendant's request for a re-interview if "anything changed" in the case, Clark re-interviewed the defendant on September 14th and informed him of Dean's statement. The defendant quickly admitted his involvement in the robbery. Additionally, Clark testified that the defendant never requested to speak with an attorney.

The defendant, on the other hand, testified that he had requested an attorney from Clark in both interviews, but Clark denied his request. The defendant further testified that during the second interview on September 14th, he was left alone in the room; an unknown person entered and threatened him with a club; and due to his threats, the defendant signed a fabricated confession.

The trial court found that the defendant was duly advised of his Miranda rights and voluntarily decided to give the statement. The trial court expressly found defendant's testimony lacking in credibility and concluded defendant was not threatened or coerced. Viewing "the totality

of the circumstances," the trial court found defendant's allegations to be without merit and denied the motion to suppress.

## B. Standard of Review

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this Court unless the evidence contained in the record preponderates against them. State v. England, 19 S.W.3d 762, 766 (Tenn. 2000). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolves any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). However, this Court is not bound by the trial court's conclusions of law. State v. Simpson, 968 S.W.2d 776, 779 (Tenn. 1998). The application of the law to the facts found by the trial court are questions of law that this court reviews *de novo*. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). The defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. Braziel v. State, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

## C. Delay in Appearance Before a Magistrate

The Fourth Amendment requires that a judicial determination of probable cause be issued promptly. Gerstein v. Pugh, 420 U.S. 103, 125, 95 S. Ct. 854, 43 L. Ed. 2d 54 (Tenn. 1975). When a person subjected to a warrantless arrest confesses after being detained for more than 48 hours without a judicial determination of probable cause, the confession should be excluded unless the prosecution establishes that the confession was sufficiently an act of free will to purge the primary taint of the unlawful invasion. State v. Huddleston, 924 S.W.2d 666, 674 (Tenn. 1996) (citing Brown v. Illinois, 422 U.S. 590, 598, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975)). However, the issuance of a valid arrest warrant satisfies the requirement that there be a judicial determination of probable cause. State v. Carter, 16 S.W.3d 762, 766 (Tenn. 2000) (citing Baker v. McCollan, 443 U.S. 137, 143, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)).

Although it is unclear from the record exactly when an arrest warrant was issued, Investigator Clark testified that "formal charges" were brought on the evening of September 12th. If so, this satisfied the Gernstein requirement.

Tenn. R. Crim. P. 5(a) requires that one "arrested . . . be taken without unnecessary delay before the nearest appropriate magistrate." The "intimidating environment" is exacerbated when the detainee is not properly brought before the magistrate. Huddleston, 924 S.W.2d at 670.

Regardless of whether there was a Gernstein and/or a Rule 5(a) violation, we conclude the defendant is not entitled to relief. If there is a Gernstein violation, a court must look to the following four factors to determine if the confession is admissible:

> (1) the presence or absence of <u>Miranda</u> warnings;
> (2) the temporal proximity of the arrest and the confession;
> (3) the presence of intervening circumstances; and finally,
> of particular significance,
> (4) the purpose and flagrancy of the official misconduct.

<u>Huddleston</u>, 924 S.W.2d at 674-75 (citing <u>Brown</u>, 422 U.S. at 603-04). A confession obtained during a period of "unreasonable delay" in violation of Rule 5(a) is still admissible, provided the totality of the circumstances reveal it was voluntarily given. <u>Carter</u>, 16 S.W.3d at 769; <u>Huddleston</u>, 924 S.W.2d at 670.

The evidence clearly establishes that the defendant received and understood the <u>Miranda</u> warnings prior to giving his statement. This factor favors admission of the confession.

Next, we consider the temporal proximity of the defendant's confession to his arrest. The defendant was arrested at approximately 10:30 p.m. on September 10th, and his written confession was obtained shortly after noon on September 14th, approximately 85 hours after his arrest. Accordingly, this factor weighs in favor of suppression.

The third factor we must consider is whether an intervening circumstance occurred that purged the taint of the defendant's illegal detention. Clark testified that during the defendant's September 11th interview, the defendant specifically requested that Clark re-interview him if any circumstances changed. The defendant's signed confession corroborates this testimony. Dean was arrested on September 13th and provided incriminating evidence implicating the defendant. This information was conveyed by Clark to the defendant on September 14th, shortly before his confession. We find that the defendant's specific request to be re-interviewed by Clark and the discovery of further incriminating evidence are intervening circumstances that favor admission of the defendant's confession.

The fourth factor we consider is the purpose and flagrancy of the official misconduct. In <u>Huddleston</u>, an officer testified that the defendant "was detained so that the police could continue the investigation and develop additional evidence." 924 S.W.2d at 676. In the case at bar, the defendant was not held for the purpose of gathering evidence to establish probable cause. The defendant was arrested minutes after the robbery within one block of the crime scene, and the victim positively identified the defendant at the time of the defendant's arrest. The officer clearly had sufficient probable cause to secure an arrest warrant at the time of the arrest. The arrest was around 10:30 p.m. on Thursday the 10th; the defendant denied involvement in his 1:30 p.m. statement on Friday the 11th; "formal charges" were initiated on the evening of Saturday the 12th; the defendant confessed shortly after noon on Monday the 14th; and defendant was taken before a magistrate that same Monday. This factor favors admission of the confession.

Furthermore, the totality of the circumstances reveals the confession was voluntary. The evidence supports the trial court's finding that the statement was not the product of coercion or

threats. There is nothing else in the record suggesting an involuntary statement. *See* Huddleston, 924 S.W.2d at 670 (listing the various factors to consider in determining whether a confession is involuntary in light of a Rule 5(a) violation).

After consideration of the aforementioned factors, we conclude that the defendant's confession was properly admitted, regardless of whether or not there was a Fourth Amendment violation and/or a Rule 5(a) violation. This issue is without merit.

## C. Involuntary Statement

The defendant contends his written statement was involuntary, thus in violation of the Fifth Amendment. We recognize that the relinquishment of Miranda rights must be voluntary and may not be the product of intimidation or coercion. State v. Blackstock, 19 S.W.3d 200, 207-08 (Tenn. 2000) (citing State v. Stephenson, 878 S.W.2d 530, 544-45 (Tenn. 1994)). However, in light of the factual findings by the trial court which are supported by the record as discussed above, there was no intimidation or coercion. Thus, this issue is without merit.

## D. Right to Counsel

The defendant contends he requested counsel, and his requests were ignored. Once an accused requests counsel, the interrogation must cease. Edwards v. Arizona, 451 U.S. 477, 482, 1015 S. Ct. 1880, 68 L. Ed. 2d 378 (1981). Any subsequent statement by the accused as a result of police-initiated interrogation must be suppressed. *Id.* at 484-85.

Implicit in the factual findings by the trial court was that the defendant did not request counsel. The evidence does not preponderate against this finding. This issue is without merit.


## III. SUFFICIENCY OF THE EVIDENCE

The defendant contends that the evidence was insufficient to sustain his conviction for aggravated robbery. We disagree.

## A. Standard of Review

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the findings by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence or a combination of direct and circumstantial evidence. State v. Brewer, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996). The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. State v. Tuttle, 914 S.W.2d 926, 932 (Tenn. Crim. App. 1995). Because a verdict of guilt

removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973).

## B. Analysis

The evidence was more than sufficient to sustain the defendant's conviction. The defendant was located minutes after the robbery within one block of the convenience store; the store's clerk, previously acquainted with the defendant, identified him at the scene, at a hearing, and at trial; Dean testified that the defendant was his accomplice; and the defendant confessed to the crime. This issue is without merit.

## IV. CUMULATIVE ERROR

The defendant alleges the cumulative effect of trial errors requires that the defendant be granted a new trial. Since we have found no errors, this issue is without merit.

## V. SENTENCING

The defendant alleges that the trial court erroneously sentenced the defendant to an enhanced sentence as a Range II offender and improperly applied enhancement factors. We disagree.

## A. Standard of Review

This Court's review of the sentence imposed by the trial court is *de novo* with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d). This presumption is conditioned upon an affirmative showing in the record that the trial judge considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If the trial court fails to comply with the statutory directives, there is no presumption of correctness and our review is *de novo*. State v. Poole, 945 S.W.2d 93, 96 (Tenn. 1997).

If no mitigating or enhancement factors for sentencing are present, Tenn. Code Ann. § 40-35-210(c) provides that the presumptive sentence for most offenses shall be the minimum sentence within the applicable range. State v. Lavender, 967 S.W.2d 803, 806 (Tenn. 1998); State v. Fletcher, 805 S.W.2d 785, 788 (Tenn. Crim. App. 1991). However, if such factors do exist, a trial court should start at the minimum sentence, enhance the minimum sentence within the range for enhancement factors and then reduce the sentence within the range for the mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute, as the weight given to each factor is left to the discretion of the trial court as long as the trial court complies with the purposes and principles of the sentencing act and its findings are supported by the record.

State v. Moss, 727 S.W.2d 229, 238 (Tenn. 1986); State v. Leggs, 955 S.W.2d 845, 848 (Tenn. Crim. App. 1997); *see* Tenn. Code Ann. § 40-35-210 Sentencing Commission Comments. Nevertheless, should there be no mitigating factors, but enhancement factors are present, a trial court may set the sentence above the minimum within the range. Tenn. Code Ann. § 40-35-210(d); Lavender, 967 S.W.2d at 806; Manning v. State, 883 S.W.2d 635, 638 (Tenn. Crim. App. 1994).

## B. Analysis

The trial judge entered excellent findings and first determined the defendant had prior convictions for aggravated burglary and robbery, thereby making him a Range II offender. The trial judge then applied sentencing enhancement factors (1) (a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range) and (10) (no hesitation about committing a crime when the risk to human life was high), and mitigating factor (12) (the defendant acted under duress or under the domination of another person). *See* Tenn. Code Ann. §§ 40-35-114(1) and (10), -113(12). The trial judge sentenced the defendant to 15 years in the Department of Correction.

The defendant had two prior felony convictions consisting of aggravated burglary and robbery, both Class C felonies. The defendant was properly classified as a Range II offender. *See* Tenn. Code Ann. § 40-35-106(a)(1).

The defendant also had a prior conviction for misdemeanor larceny. The trial court properly used this misdemeanor conviction under enhancement factor (1), although it is entitled to little weight.

As for enhancement factor (10), the evidence clearly supports its application. The evidence revealed that a customer came in the store during the robbery. Thus, this factor was properly applied since one other than the victim was in the area and subject to injury. State v. Sims, 909 S.W.2d 46, 50 (Tenn. Crim. App. 1995).

The defendant faced a range of punishment of 12 to 20 years as a Range II offender. *See* Tenn. Code Ann. § 40-35-112(b)(2). Considering the enhancement factors and mitigating factor applied by the trial court, the 15-year sentence, which was less than mid-range, was appropriate. This issue is without merit.

## CONCLUSION

Based upon the foregoing, we conclude (1) the trial court properly admitted the defendant's inculpatory statement; (2) the evidence was sufficient to sustain the defendant's conviction for aggravated robbery; (3) there were no cumulative errors; and (4) the trial court properly sentenced the defendant. Thus, the judgment of the trial court is affirmed.

_____
JOE G. RILEY, JUDGE